**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CAN SOFTTECH, INC., | ) |
| Plaintiff, | ) No. 24-1009 |
| v. | ) Filed: October 1, 2024 |
| THE UNITED STATES, | ) Re-issued: October 15, 2024[*] |
| Defendant. | ) |

<u>**OPINION AND ORDER**</u>

Plaintiff CAN Softtech, Inc. ("CSI") seeks an order requiring the Government to complete the Administrative Record with additional evidence CSI believes the Government improperly withheld. CSI also seeks to compel public disclosure of a key document included in the sealed Administrative Record. For the reasons that follow, the Court **GRANTS IN PART**, **DEFERS IN PART**, and **DENIES IN PART** CSI's Motion to Complete and/or Supplement the Administrative Record and Motion to Compel Redacted Document (ECF No. 18).

**I.   BACKGROUND**

On January 2, 2024, the General Services Administration ("GSA") awarded a contract under Request for Quote No. 47QFLA23Q0116 (the "Solicitation") to CSI for the provision of information technology services to the United States Air Force. *See* Pl.'s Compl. ¶ 3, ECF No. 1. On July 1, 2024, CSI filed the instant bid protest challenging certain decisions of GSA in relation to the procurement. *See generally id.* CSI alleged that: (1) GSA's decision to take corrective action in response to a post-award bid protest filed by the incumbent at the Government

---

[*] The Court issued this opinion under seal on October 1, 2024, and directed the parties to file any proposed redactions by October 8, 2024. As the parties did not propose any redactions, the Court reissues the opinion publicly in full.

Accountability Office ("GAO") and subsequent decision to cancel the award to CSI and issue a revised solicitation was arbitrary and capricious, and (2) GSA's extension of the incumbent contract on a sole-source basis was improper and unlawful. *See id.* ¶¶ 1–15. At the initial status conference held on July 9, 2024, the parties discussed the potential exchange of relevant procurement documents prior to the Government filing the Administrative Record. In a July 16, 2024, Joint Status Report, the Government explained that it would include in the Administrative Record a June 25, 2024, memorandum entitled "Determination & Findings Termination for Convenience and Re-Solicitation" ("D&F Memo") providing GSA's explanation for canceling the original solicitation and award to CSI. Joint Status Report at 1, ECF No. 17. The Government indicated it would not produce certain other documents related to the contract termination or re-solicitation because GSA is still finalizing a new solicitation and because such pre-decisional documents were developed during the deliberative process and are thus privileged. *Id.* at 1–2.

On August 7, 2024, before the Government filed the Administrative Record, CSI filed a Motion to Complete and/or Supplement the Administrative Record and a Motion to Compel a Redacted Document. *See* Mot. to Complete & Compel, ECF No. 18. The Government filed the Administrative Record two days later. *See* Admin. R. ("AR"), ECF No. 19-1. It responded to CSI's Motion on August 21. *See* Resp. to Mot. to Complete & Compel, ECF No. 22. Then, on August 28, 2024, CSI filed an Amended Complaint, adding an allegation that GSA breached its implied duty of good faith and fair dealing by offering a pretextual rationale for its decision to cancel the award and start the procurement from scratch. Pl.'s Am. Compl. ¶¶ 95–97, ECF No. 23. In support of this claim, CSI attached a declaration from its Chief Executive Officer, Swapna Reddygari, explaining that Ms. Reddygari and CSI learned from Air Force personnel that "GSA was attempting to persuade the Air Force to terminate CSI's award, cancel the Solicitation, and

issue a new solicitation—all for the purpose of continuing the incumbent's performance and avoiding a bid protest." *Id.* at 27 (Reddygari Decl. ¶ 8).  On the same day, CSI filed its Reply in Support of its Motion to Complete.  *See* ECF No. 24.  Because the Government had no opportunity to respond to CSI's new allegations and the newly attached declaration, the Court stayed the merits briefing schedule and ordered the Government to file a sur-reply.  Order at 2, ECF No. 26.  The Government filed a Sur-Reply on September 6.  *See* ECF No. 28.  The Court held oral argument on the motion on September 16, 2024.

CSI seeks three types of documents to complete the record: (1) "[i]nternal correspondence, including emails and memoranda, that reflect GSA's contemporaneous decision-making in announcing corrective action in response to [the incumbent contractor's administrative] protest;" (2) "[i]nternal correspondence, including emails and memoranda, that reflect GSA's contemporaneous decision-making leading to its decision to terminate CSI's Contract and to produce the D&F Memo;" and (3) "[d]ocuments reflecting proposed revisions of the Solicitation and/or GSA's effort to effect the changes suggested in the D&F Memo."  ECF No. 18 at 5–6.  CSI indicates that it is reserving the right to supplement the record with a deposition of GSA's contracting officer.  *See id.* at 7.  The Government argues that CSI merely speculates that the Administrative Record is incomplete and that CSI fails to provide any evidence suggesting any documents were improperly omitted.  ECF No. 22 at 3–5.  It further asserts that the categories of documents CSI seeks are privileged and, therefore, are not part of the record.  *Id.* at 4–5.  CSI also seeks to compel the public filing of the D&F Memo.  ECF No. 18 at 7–8.  The Government contends that the memo contains competition-sensitive information and should remain sealed pending the outcome of this litigation.

## II.  LEGAL STANDARDS

In a bid protest action, the Court "review[s] the agency's decision pursuant to the standards set forth in section 706" of the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004). Under such standard, the Court's task is "to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based *on the record the agency presents*" to the Court. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379–80 (Fed. Cir. 2009) (emphasis in original) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)). As the United States Court of Appeals for the Federal Circuit has explained, "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Id.* at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).

In certain instances, a plaintiff may allege that the record filed by the Government is incomplete or that the Court should supplement the record with extra-record evidence. Different standards govern motions to complete and to supplement the administrative record. *See ELB Servs., LLC v. United States*, 172 Fed. Cl. 233, 241 (2024). Because the Government's "designation of an administrative record is entitled to a presumption of completeness," plaintiffs must provide "clear evidence" that the record lacks information "that was generated and considered by the agency" during procurement to prevail on a motion to complete. *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019); *Smith v. United States*, 114 Fed. Cl. 691, 695 (2014); *cf. Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002) (explaining that courts presume government officials exercise their duties in good faith). To supplement, plaintiffs must make a higher showing: that the Court's consideration of extra-

4

record evidence is necessary to effectuate meaningful judicial review. *See Axiom*, 564 F.3d at 1380.

Separately, courts may also compel disclosure of sealed documents protected from disclosure by a protective order. *See Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (discussing the presumption of public access to judicial records). Courts balance public and private interests to determine whether there is good cause to maintain the records under seal. *See id.*; *see also DNC Parks & Resorts at Yosemite, Inc. v. United States*, 127 Fed. Cl. 435, 438–39 (2016). "Good cause is established by showing that 'specific prejudice or harm will result'" if the information is not protected from disclosure. *DNC Parks*, 127 Fed. Cl. at 438 (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)). That disclosure of the information might harm the litigant's competitive standing typically outweighs the public interest in unsealing records. *Id.* (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). But other interests—like privacy interests or concerns about embarrassment—may not be sufficiently compelling to justify maintaining a document under seal. *See id.*

### III. DISCUSSION

With one exception, CSI has not met its burden to show that the Administrative Record is incomplete. CSI argues that the Government must meet certain procedural requirements before invoking privileges over documents withheld from the Administrative Record. But the weight of authority from federal courts that have decided the issue makes clear that *CSI* has the burden to overcome the presumption of completeness. CSI has not met its initial burden save for one missing attachment referenced in a decisional document in the Administrative Record. For that reason, the Court grants in part and denies in part CSI's Motion to Complete (ECF No. 18). To the extent the Government claims a privilege over the attachment, it must submit the document for *in camera*

review after which the Court will determine whether the Government must complete the record with that document.

CSI has, though, shown that the Government must produce a redacted version of the D&F Memo for public disclosure pursuant to the Protective Order entered in this case. To that extent, the Court grants CSI's Motion to Compel (ECF No. 18). Depending on whether the parties have a dispute about any proposed redactions, the Court defers ruling on whether the presumption of public access to judicial documents outweighs the Government's interest in protecting from disclosure any competition-sensitive information in the memo.

### A. Except for a Missing Attachment, CSI Has Not Shown the Record Is Incomplete.

#### 1. Privileged Documents Are Not Part of the Administrative Record, Nor Is the Government Required to Provide a Privilege Log.

Although CSI originally filed a Motion to Complete the Administrative Record and, in the "Alternative and in Addition," for "Supplementation,"[1] ECF No. 18 at 7, its Reply disavows any supplementation request. *See* ECF No. 24 at 14 ("[CSI] seeks only to *complete* the record with existing documents that Defendant has withheld." (emphasis in original)). And CSI repeated and emphasized at oral argument that it does *not* seek to supplement the record with extra-record evidence; rather, it merely seeks to complete the record with existing evidence that GSA developed and considered but that the Government has withheld thus far in this litigation. *See* Oral Arg. Tr. at 4:1–10, 6:22–23, 24:20–21, ECF No. 31. Under that framework, CSI argues that *all* such records—even facially privileged ones—are properly considered part of the administrative record in a bid protest. The corollary it proposes is that the Government must invoke certain procedural requirements (including providing a privilege log) to assert privilege over documents excluded

---

[1] In its "Supplementation" section, CSI "reserve[d] the right to move to take the deposition" of the GSA Contracting Officer after having an opportunity to review the completed administrative record. ECF No. 18 at 7.

from the record. As support, CSI points to cases like *Trace Systems Inc. v. United States*, 160 Fed. Cl. 691 (2022); *Xerox Corp. v. United States*, No. 21-1807, 2021 WL 9563553 (Fed. Cl. Dec. 17, 2021); and *ARKRAY USA, Inc. v. United States*, No. 14-233C, 2014 WL 2905127 (Fed. Cl. Apr. 28, 2014). *See* ECF No. 18 at 5; *see also* ECF No. 31 at 14:18–15:18, 24:16–26:5, 36:1–16.

The Government responds that privileged documents are by definition not part of an administrative record compiled for review under the APA standard of review, and the Government need not provide a privilege log or meet any other procedural requirements because it is not "withholding" such documents. *See* ECF No. 22 at 4–5. It relies principally on APA case law from other jurisdictions. *Id.* at 5 (citing *Stand Up for California! v. U.S. Dep't of the Interior*, 71 F. Supp. 3d 109, 123 (D.D.C. 2014); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 801 (E.D. Va. 2008)).

The administrative record in an APA case (or, as here, a case applying APA review) consists of "all documents and materials that the agency directly or indirectly considered." *Safari Club Int'l v. Jewell*, 111 F. Supp. 3d 1, 4 (D.D.C. 2015); *see Constr. Helicopters Inc. v. United States*, 169 Fed. Cl. 102, 107 (2024) (holding that the administrative record should generally include "those materials 'developed and considered by the agency in making its decision'" (quoting *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997)). The Federal Circuit has not decided the issue of whether a complete administrative record must include pre-decisional, deliberative inter-agency documents or whether the Government must comply with any procedures to invoke a claim of privilege over those materials. But several other courts, including other circuit courts of appeal and this court, have addressed that exact question.

In general, these cases establish that internal deliberative and other privileged materials may be excluded from the administrative record—indeed, they are not even properly considered part of the administrative record in the first instance—without necessarily invoking any formal

7

procedural steps to assert privilege. *See, e.g.*, *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019); *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444–45 (9th Cir. 2024), *petition for cert. filed*, No. 24-300 (U.S. Sept. 13, 2024); *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Hum. Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009); *Tafas*, 530 F. Supp. 2d at 794; *Constr. Helicopters*, 169 Fed. Cl. at 108–09, 112; *Poplar Point*, 145 Fed. Cl. at 494–95, 495 n.2; *Joint Venture of Comint Sys. Corp. v. United States* (*Comint*), 100 Fed. Cl. 159, 169 (2011).[2]

That is because, under the arbitrary-and-capricious review standard, "the reasonableness of the agency's action 'is judged in accordance with its stated reasons.'" *Chain Drug Stores*, 631 F. Supp. 2d at 27. The "actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior." *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279–80 (D.C. Cir. 1998). Because pre-decisional, deliberative documents in an APA-review case are "immaterial" and necessarily irrelevant to the reasonableness of the agency's action, they are not "otherwise discoverable" or within the meaning

---

[2] Neither party has identified any other precedential opinions from the circuit courts of appeals that have squarely considered the same question. The Court uncovered three other relevant but non-precedential federal appellate opinions. An unpublished Sixth Circuit opinion broadly supports the Government's position here. In that case, the court relied on the presumption of regularity to hold that petitioners had largely failed to carry their burden (*i.e.*, clear evidence) to show that the amended administrative record was incomplete on appeal. *See In re U.S. Dep't of Def. & U.S. EPA Clean Water Rule*, Nos. 15-3751 et al., 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016). The court did so without ordering the Government to submit a privilege log. *See id.*

Unpublished slip opinions from the Second and Fourth Circuits point in the other direction. *See In re Nielsen*, No. 17-3345, slip op. at 1–2 (2d Cir. Dec. 27, 2017) (quoting *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013)) (denying the "drastic" remedy of mandamus where the Government sought to prevent the district court from ordering it to produce a privilege log for materials withheld from the administrative record); *Defs. of Wildlife v. U.S. Dep't of the Interior*, No. 18-2090, slip op. at 2 (4th Cir. Feb. 5, 2019) (summarily granting, without explanation, the petitioners' motion to compel a privilege log identifying the basis for withholding documents from the administrative record on appeal). The Second Circuit noted that "the possibility that some documents not included in the record may be deliberative does not necessarily mean that they were properly excluded," and the district court would be "unable to evaluate the Government's assertions of privilege" without a privilege log. *In re Nielsen*, *supra*, slip op. at 3.

8

of the rules governing discovery in federal courts, and thus no privilege log is required. *Oceana*, 920 F.3d at 865 (citing Fed. R. Civ. P. 26(b)(1), (b)(5)); *see* RCFC 26(b)(1) ("[P]arties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense . . . ." (emphasis added)), 26(b)(5) (requiring production of privilege log "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material"). A default rule requiring the Government to submit documents for *in camera* review or produce a privilege log noting every document not included in an administrative record on the basis of privilege risks converting this case into exactly what the Federal Circuit has warned lower courts to avoid: a de novo proceeding. *See Axiom*, 564 F.3d at 1379–80.

The Court acknowledges that several judges of this Court have required the Government in bid protest cases to produce a privilege log covering internal deliberative materials not included in the administrative record, or at least suggested it as the proper course. *See* ECF No. 24 at 10 (citing *EFW, Inc. v. United States*, 147 Fed. Cl. 186, 189 (2020); *ARKRAY*, 2014 WL 2905127, at *6 n.15; *Oak Grove Techs., LLC v. United States*, 156 Fed. Cl. 594, 606 n.18 (2021); *Poplar Point*, 145 Fed. Cl. at 493); *see also Trace Sys.*, 160 Fed. Cl. at 697. Several of the cited cases did not explain the legal basis for ordering a privilege log or *in camera* review of such materials, although presumably the orders were premised on an exercise of the courts' discretion rather than a legal obligation. *See, e.g.*, *ARKRAY*, 2014 WL 2905127, at *2 (providing no explanation for the earlier decision to order *in camera* review); *Poplar Point*, 145 Fed. Cl. at 491 (same); *EFW*, 147 Fed. Cl. at 189 (same); *Trace Sys.*, 160 Fed. Cl. at 696–97 (relying on *ARKRAY*, *Poplar Point*, and *EFW*); *see also In re United States*, 583 U.S. 29, 31–32 (2017) (per curiam) (holding in an APA case that the lower court "may not compel the Government to [complete the record with] any document that

9

the Government believes is privileged without first providing the Government with the opportunity to argue the issue" but remanding to the district court to first consider the Government's threshold justiciability and jurisdictional arguments); *In re United States*, 138 S. Ct. 371, 374 (2017) (Breyer, J., dissenting from the grant of a stay) (noting that a district court has "considerable discretion" in evidentiary rulings and that the trial court's order requiring *in camera* review was not, in the dissent's eyes, an abuse of that discretion).

Moreover, some of the cases appear to conflate the completion and supplementation standards, applying something akin to the necessary-for-meaningful-review standard to determine whether the movant had met its burden to justify completion of the administrative record *See ARKRAY*, 2014 WL 2905127, at *5; *Poplar Point*, 145 Fed. Cl. at 495 ("[T]he court agrees with the government that the documents do not add anything, beyond what is already in the administrative record, regarding [the plaintiff's claims]."). That standard tracks the Federal Circuit's supplementation standard, not the standard to complete the administrative record. *See Axiom*, 564 F.3d at 1380.

As well, the fact that the cases cited by CSI involved bid protests is not on its own compelling. The Tucker Act directs the Court to apply the APA standard of review in such actions. 28 U.S.C. § 1491(b)(4). CSI has pointed to no authority that draws any distinctions between applying the standard in a case brought directly under the APA and a case brought under this Court's bid protest jurisdiction, and none of the decisions CSI cites rested on any peculiarity of bid protest actions or procurement law. As such, the Court finds more persuasive the conflicting analysis from other judges on the court (*e.g.*, *Construction Helicopters*), as well as numerous similar holdings from other jurisdictions, as discussed above.

Of course, this all begs the question of how a party, like CSI, that alleges an agency's stated rationale for a challenged decision was pretextual can obtain pre-decisional, deliberative materials or information not included in the administrative record in order to support its claim. The weight of the authority—including cases of this court—supports the conclusion that the party must make a strong showing of bad faith or some other improper behavior by the agency. *See EFW*, 147 Fed. Cl. at 189; *Constr. Helicopters*, 169 Fed. Cl. at 106; *Oceana*, 920 F.3d at 865; *Blue Mountains*, 99 F.4th at 444–45. As this court has acknowledged, evidence tending to show bad faith or improper conduct "by its very nature would not be found in an agency record." *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343–44 (2004). The same goes for allegations of a pretextual rationale. *See Dep't of Com. v. New York*, 588 U.S. 752, 781–84 (2019) (holding that a court "may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons" unless there is some showing of bad faith or other improper behavior, like a "significant mismatch" between an agency's decision and the rationale provided to support the decision, that would support the conclusion that the rationale is "contrived").

Even caselaw considering the issue under the completion standard makes clear that the movant must meet *some* burden to succeed in completing the administrative record. In the context of privileged materials, that burden is, at a minimum, to provide (1) clear evidence that the Government improperly withheld the documents from the record, or (2) "a 'reasonable factual predicate'" for an allegation that the agency engaged in bad faith, improper behavior, or bias. *Xerox*, 2021 WL 9563553, at *6 ("The Court agrees with the government that Xerox seeks deliberative documents and finds that Xerox has not established that such documents were improperly withheld or that the deliberative process privilege should be overcome."); *Comint*, 100 Fed. Cl. at 167 (noting that the plaintiff did not allege bad faith or improper behavior necessary to

11

show that deliberative process materials were necessary to complete the record). CSI expressly disclaims that its pretext argument amounts to a bad faith claim, ECF No. 24 at 14, but judges of this court have considered them one and the same in the context of a bid protest challenging a cancelation decision. *See, e.g.*, *BAE Sys. Norfolk Ship Repair, Inc. v. United States*, 163 Fed. Cl. 217, 238 (2022) (citing *Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 130 (2010)); *Irwin County v. United States*, 170 Fed. Cl. 355, 369–71 (2024); *Klinge Corp. v. United States*, 87 Fed. Cl. 473, 479–80 (2009) (citing *Klinge Corp. v. United States*, 83 Fed. Cl. 773, 779–80 (2008)); *Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 41 (2010) ("[A]ssertions of pretextual disqualification are tantamount to accusations of bad faith."); *Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 32 (2022) ("'[A]n agency's explanation for canceling a solicitation cannot be a pretext for an improper motive or reason . . . .' [T]here is no concrete evidence in the record demonstrating that the [agency] has acted in bad faith or with malicious intent." (quoting *Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 122 (2011))).

        2.      <u>Except for a Missing Attachment, CSI Has Not Shown Clear Evidence that the Administrative Record Is Incomplete or that It Should Be Supplemented.</u>

In large part, CSI has failed to meet its burden to show that the Government failed to complete the Administrative Record. CSI moves to include in the record three broad categories of pre-decisional internal correspondence, memoranda, and any draft revisions to the as-of-now unreleased, revised solicitation. *See* ECF No. 18 at 5–6. Documents responsive to these descriptions are prototypically pre-decisional and deliberative. Without providing more evidence that (1) the Government improperly withheld those documents or (2) the documents provide a reasonable factual predicate for improper behavior, like pretext, CSI cannot show that these categories of documents should be part of the record. *See, e.g.*, *Constr. Helicopters*, 169 Fed. Cl. at 108–09 ("Deliberative process documents include 'internal memoranda made during the

decisional process' and 'are never included in a record.'" (quoting *Norris & Hirshberg v. SEC*, 163 F.2d 689, 693 (D.C. Cir. 1947))).

Instead, CSI principally supports its completion request with the pretext allegations added in its Amended Complaint and Reply, which rely on (1) the purported lack of an explanation for the corrective action and cancelation in the D&F Memo, and (2) alleged conversations that Ms. Reddygari had with Air Force officials indicating that GSA was "resisting the announcement of a re-award to CSI" for the "purpose of continuing the incumbent's performance and avoiding a bid protest." ECF No. 23 ¶ 18; *see id.* at 27 (Reddygari Decl. ¶¶ 6, 8); *see also* ECF No. 24 at 9–10. Additionally, it points to "recent conduct" purportedly showing "that the D&F Memo does not tell the whole story," including alleged misrepresentations about the status of the corrective action in response to CSI's pre-filing notice and the delay between GSA's internal decision to cancel and the issuance of the D&F Memo. *See* ECF No. 24 at 15.

Generally, nothing in CSI's allegations suggests either that the Government considered documents that it failed to include or that the Government somehow acted improperly in declining to produce pre-decisional documents that reflected its contemporaneous decision-making with respect to the actions at issue in this bid protest. In relevant part, the D&F Memo references only what appear to be conversations between the GSA contracting team, GSA's legal counsel, and the Air Force about perceived flaws in the original Solicitation. AR 773.[3] CSI has not supplied any evidence that these internal conversations are not what they appear: deliberative and, thus, outside of the administrative record, or pretextual. Evidence from CSI's Amended Complaint suggests only that GSA attempted to "persuade" the Air Force to terminate CSI's award, not that GSA

---

[3] For ease of reference, citations to the Administrative Record refer to the bates-labeled page numbers rather than the ECF page numbers.

13

somehow acted in bad faith or with an improper purpose. ECF No. 23 at 27 (Reddygari Decl. ¶ 8). GSA is the agency with procurement authority. *See id.* ¶¶ 35–51. Any disagreement the Air Force may have had with GSA's decision does not in itself suggest that GSA acted improperly. Further, the alleged pretext here—GSA's desire to avoid a bid protest—does not significantly "mismatch" GSA's stated justifications for canceling the Solicitation—*i.e.*, a belief that the original Solicitation contained significant ambiguities. *Dep't of Com.*, 588 U.S. at 783; *see* AR 773–74.

CSI's additional suggestion of impropriety—that the timeline in the D&F Memo shows that the memo "does not tell the whole story" about GSA's decision-making, ECF No. 24 at 11—similarly fails to meet, at a minimum, the clear-evidence threshold for showing the Administrative Record is incomplete. The timeline laid out in the D&F Memo aligns almost perfectly with CSI's description of the cancelation process. Ms. Reddygari alleged that she was told re-evaluation of proposals was complete in late February 2024. ECF No. 23 at 27 (Reddygari Decl. ¶ 5). She further indicated that GSA was "resisting" re-award to CSI in late March 2024. *Id.* (Reddygari Decl. ¶ 6). Lastly, she "learned" in April 2024 that GSA "was attempting to persuade" the Air Force to cancel the Solicitation. *Id.* (Reddygari Decl. ¶ 8). On April 25, 2024, she learned that GSA had decided to terminate CSI's award. *Id.* (Reddygari Decl. ¶ 9). The D&F Memo explains that re-evaluation occurred from February 1, 2024, to March 22, 2024. AR 773. That provides context to Ms. Reddygari's belief that re-evaluation was "completed" in late February 2024, but that GSA was "resisting" re-award in March 2024. ECF No. 23 at 27 (Reddygari Decl. ¶¶ 5–6). To the Court, Ms. Reddygari's admission that GSA continued to consider CSI's award through "the third week of March 2024," *id.* (Reddygari Decl. ¶ 6), underscores that GSA's re-evaluation was not, in fact, complete—directly in line with the timeline in the D&F Memo. *See* AR 773. Finally, the D&F Memo's March and April 2024 timeline matches almost perfectly Ms.

14

Reddygari's asserted timeline. In April, GSA began discussing potential "vagueness" in the original Solicitation. *Id.* Then, in late April, GSA finalized its "discussions" about potential termination. *Id.* After a month-long investigation into potential Procurement Integrity Act ("PIA") violations in May 2024, *see id.* at 780, GSA formally notified CSI about the award's cancelation on June 25, 2024, *see id.* at 778. A delay in confirming cancelation, due in part to completing a PIA investigation, does not, to the Court, suggest improper behavior. It suggests instead that GSA sought to ensure that it had complied with the law.

CSI's broad requests for completion of the record thus do not "rest on a strong evidentiary footing." *Xerox*, 2021 WL 9563553, at *6 (quoting *Orion Int'l Techs.*, 60 Fed. Cl. at 344); *see EFW*, 147 Fed. Cl. at 188 (explaining that the party "need not meet the same burden of proof that it ultimately must satisfy on the merits" but must provide "sufficient well-grounded allegations" of bad faith or improper conduct). Its "argument that the Agency withheld" pretextual "documents from the record is essentially" just "an allegation." *Xerox*, 2021 WL 9563553, at *6. And the lack of a sufficient factual basis for the allegation that GSA omitted or improperly withheld documents from the record means that, as a general matter, CSI has not met its burden to complete the record. *See Constr. Helicopters*, 169 Fed. Cl. at 112. Of course, CSI's allegation that the record is devoid of reasoning supporting GSA's decision to conduct a corrective action and then to cancel CSI's award and amend the Solicitation is a valid argument on the merits that GSA's actions cannot be sustained under the arbitrary and capricious standard of review. *See Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009). But that is a decision the Court must make at the conclusion of the merits briefing, and, without clear evidence that material was omitted, it is not a proper factual basis for seeking completion of the record.

Only one exception exists. CSI has identified one decisional document that the Administrative Record references but does not include. *See* ECF No. 24 at 11. A brief description of the document, apparently a draft memo entitled "Draft D&F ELFF Procurement Integrity Violation or Possible Violation," is referred to as "Attachment 1" in a July 30, 2024, Memorandum to File pertaining to GSA's investigation of potential PIA violations in connection with the initial procurement and award of the Solicitation to CSI. *See* AR 780–81. At argument, the Government suggested that the draft memo had been excluded from the Administrative Record because of the memo's "apparent nature" as a "draft" and not a "finalized decisional document." ECF No. 31 at 47:14–19, 49:9–11. The Government acknowledged, though, that the draft memo likely included a summary "recitation of the facts" related to the alleged PIA violations, which is in turn "tangentially" related to the decisions GSA made to take corrective action and cancel CSI's contract. *Id.* at 49:1–50:24. As a general matter, "factual or investigative material" is not protected by the deliberative process privilege "except as necessary to avoid indirect revelation of the decision-making process." *Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 134 (2006) (quoting *Scott Paper Co. v. United States*, 943 F. Supp. 489, 496 (E.D. Pa. 1996)). Indeed, the draft is said to "record the possible [PIA] violations," which are not otherwise summarized in the final memo, and which would simply constitute the factual allegations that were investigated. AR 780. This evidence provides a sufficient factual basis for CSI's claim that the Administrative Record omits a document directly considered by the GSA during the decision-making process.

Accordingly, the Court grants in part CSI's Motion to Complete and orders the Government to submit the draft memo (*i.e.*, "Attachment 1") identified on AR 781 for *in camera* review. *See also Kerr v. U.S. Dist. Ct. for N. Dist. of Calif.*, 426 U.S. 394, 406 (1976) ("[I]n camera review is a highly appropriate and useful means of dealing with claims of governmental

privilege."). At the same time the Government should submit an explanation of how the document is both "predecisional" and "deliberative." *See Pac. Gas & Elec.*, 70 Fed. Cl. at 133. The Government may propose redactions to information it believes is privileged, minding that factual and investigative material is generally not protected by the deliberative process privilege. The Government should provide justifications for any redactions. After reviewing Attachment 1, the Court will issue a final ruling on whether the document must be included to complete the Administrative Record. If the Government does not intend to assert privilege over the document, it should file the document as an amendment to the Administrative Record. The Court denies CSI's Motion to Complete in all other respects.

### B. The Government Must Disclose a Redacted Version of the D&F Memo.

The Court grants in part CSI's Motion to Compel public disclosure of the D&F Memo. The Court previously found good cause to issue a protective order to safeguard the confidentiality of competition-sensitive information in this litigation. Protective Order at 1, ECF No. 11. Paragraph 12 of the Protective Order provides that the parties must file redacted versions of under seal filings on the public record, and it sets forth a procedure for the parties to confer and agree (or object) to proposed redactions. *See id.* at 3. As the Government acknowledged during argument, CSI has no burden under the Protective Order to seek or justify disclosure of a redacted filing. *See* ECF No. 31 at 60:20–61:5. And the Government conceded that the D&F Memo contains at least some information that does not appear to be competition-sensitive, like events in the procurement timeline. *See id.* at 61:17–24. With proper redactions to information that GSA considers competition-sensitive, the public interest in accessing the D&F Memo—the core decisional document of this case—can be balanced with the Government's interests in maintaining protected information under seal.

The Court therefore orders the Government to comply with the procedures in paragraph 12 of the Protective Order to create a redacted version of the D&F Memo for public filing. The parties should work in a good faith effort to resolve any disputes over redactions. If the parties cannot reach agreement on the proposed redactions, CSI may seek the Court's intervention in accordance with paragraph 12(d). *See* ECF No. 11 at 3.

## IV.  CONCLUSION

For these reasons, the Court **GRANTS IN PART**, **DENIES IN PART**, and **DEFERS RULING IN PART** on Plaintiff's Motion to Complete the Administrative Record (ECF No. 18) and **GRANTS IN PART AND DEFERS RULING IN PART** on Plaintiff's Motion to Compel (ECF No. 18). The Government shall make its *in camera* submission of Attachment 1 **by no later than October 8, 2024**. If the Government does not intend to assert privilege over the document, it should file the document as an amendment to the Administrative Record by that same date. The Government shall serve CSI with a copy of the proposed redacted D&F Memo **by no later than October 8, 2024**. The parties shall follow the timeline set forth in paragraph 12 of the Protective Order to confer on any redactions.

**SO ORDERED.**


Dated: October 1, 2024                                          */s/ Kathryn C. Davis*
                                                                KATHRYN C. DAVIS
                                                                Judge