**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |
|---|---|
| CAN SOFTTECH, INC., | ) |
| Plaintiff, | ) No. 24-1009 |
| v. | ) Filed: December 20, 2024 |
| THE UNITED STATES, | ) Re-issued: January 2, 2025* |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff CAN Softech, Inc. ("CSI") seeks reconsideration of the Court's October 1, 2024, Opinion and Order granting in part and denying in part CSI's Motion to Complete the Administrative Record. After thorough review, the Court concludes that CSI has failed to show that the Court's Opinion and Order contravened binding circuit precedent, that the Court erred by relying on persuasive out-of-circuit authority, or that the presumption of regularity and completeness should not apply to the Government's designation of the Administrative Record. Accordingly, the Court **DENIES** CSI's Motion for Reconsideration.

### I. BACKGROUND

CSI's bid protest challenges the General Services Administration's ("GSA") decisions to take corrective action in the procurement at issue and, subsequently, to terminate the contract award to CSI, extend the incumbent contract on a sole-source basis, and issue an amended solicitation. *See* Op. & Order at 1–3, ECF No. 34. The instant dispute concerns CSI's challenge

---

* The Court issued this opinion under seal on December 20, 2024, and directed the parties to file any proposed redactions by December 27, 2024. As the parties did not propose any redactions, the Court reissues the opinion publicly in full.

to the completeness of the Administrative Record filed by the Government in this action.[1]  *See*

Mot. to Complete, ECF No. 18.

The Court largely denied CSI's Motion to Complete.  *See generally* ECF No. 34.  It explained that because bid protests are reviewed pursuant to the standards set forth in the Administrative Procedure Act ("APA"), the Court must apply the appropriate APA standard of review to GSA's procurement decisions "based *on the record the agency presents*" to the Court. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (emphasis in original) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)); *see* ECF No. 34 at 4.  That limitation—from which flow the standards governing motions to complete or supplement an administrative record—avoids converting the APA's "'arbitrary and capricious' standard into effectively de novo review."  ECF No. 34 at 4 (quoting *Axiom*, 564 F.3d at 1380). Because the Government is responsible for compiling the administrative record for judicial review in an APA-review case (like a bid protest), and its designation of the record is entitled to a presumption of regularity, the burden is on the opposing party to show by clear evidence that the Government either omitted information that was considered by the agency during the decision-making process or, in the case of a motion to supplement, that inclusion of extra-record evidence is necessary to effectuate meaningful judicial review.  *See id.* at 4–5; *see also Axiom*, 564 F.3d at 1379–80 (noting that APA standards govern the scope of the administrative record in a bid protest);

---

[1] Specifically, CSI sought to complete the record with three broad categories of documents: (1) "[i]nternal correspondence, including emails and memoranda, that reflect GSA's contemporaneous decision-making in announcing corrective action in response to [the incumbent contractor's administrative] protest;" (2) "[i]nternal correspondence, including emails and memoranda, that reflect GSA's contemporaneous decision-making leading to its decision to terminate CSI's Contract and to produce the D&F Memo;" and (3) "[d]ocuments reflecting proposed revisions of the Solicitation and/or GSA's effort to effect the changes suggested in the D&F Memo."  Mot. to Complete, at 5–6, ECF No. 18.

*Camp v. Pitts*, 411 U.S. 138, 142 (1973) (holding that in an APA case the "focal point for judicial review should be the administrative record already in existence"); *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019) ("Ordinarily, the government's designation of an administrative record is entitled to a presumption of completeness; however, courts have recognized that this can be rebutted by clear evidence to the contrary."); *see also Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary.").

Applying those standards, the Court denied in large part CSI's broad requests to complete the Administrative Record because CSI failed to provide clear evidence that the Government improperly withheld documents that should be part of the record.[2] ECF No. 34 at 12. In particular, it held that the documents CSI sought were "prototypically pre-decisional and deliberative," *id.*, and as facially privileged documents they were not properly considered part of the record, *id.* at 6–9. The Court further rejected CSI's contention that the Government must meet certain procedural requirements to invoke privileges over documents not included in the record. *Id.* Finally, the Court found that CSI's pretext allegations were not sufficiently supported by the record evidence. *Id.* at 13–15.

On October 17, 2024, CSI filed a Motion for Reconsideration of the Court's Opinion and Order. *See* ECF No. 36. CSI argues that the Court (1) failed to cite or apply controlling precedent from the United States Court of Appeals for the Federal Circuit, (2) erred by relying on persuasive

---

[2] The Court found that CSI provided evidence that one document—a draft memorandum apparently documenting alleged Procurement Integrity Act ("PIA") violations ("Attachment 1")—had been improperly withheld because that document appeared to contain some non-privileged information that GSA indirectly considered during the decision-making process leading up to the contract termination. ECF No. 18 at 16. Thus, the Court granted CSI's Motion in part and ordered the Government to submit the document for *in camera* review to determine whether it should be included in the Administrative Record. *See id.* at 16–17.

3

out-of-circuit authority, and (3) had no reasonable basis for deferring to the presumption of completeness that applies to the Administrative Record. *Id.* at 6–8. After review, the Court determines that CSI has not provided any reason, let alone a reason sufficient under Rule 54(b) of the Rules of the United States Court of Federal Claims ("RCFC"), to reconsider its earlier Opinion and Order.

## II.  LEGAL STANDARDS

RCFC 54(b) governs the reconsideration of interlocutory orders in the Court of Federal Claims. *See Capstone Associated Servs., Ltd. v. United States*, No. 21-0913, 2023 WL 5624480, at *3 (Fed. Cl. Aug. 31, 2023). In relevant part, RCFC 54(b) provides that "any order or other decision" that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action" and "may be revised at any time before the entry" of final judgment. RCFC 54(b). Reconsideration is not intended to "give an unhappy litigant an additional chance to sway the court." *Martin v. United States*, 101 Fed. Cl. 664, 671 (2011) (internal quotations omitted) (quoting *Matthews v. United States*, 73 Fed. Cl. 524, 525 (2006)). Rather, reconsideration is available "as justice requires," *Sacramento Grazing Ass'n v. United States*, 154 Fed. Cl. 769, 778–79 (2021), which typically means that the court "patently misunderstood a party;" "made a decision outside the adversarial issues" that the parties presented to the court; "made an error not of reasoning, but of apprehension;" or that "controlling or significant" changes in the law or facts have occurred since the issue was submitted to the Court. *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 49 (2011) (quoting *Potts v. Howard Univ. Hosp.*, 623 F. Supp. 2d 68, 71 (D.D.C. 2009)).

### III. DISCUSSION

CSI has failed to provide a basis for the Court to reconsider its earlier Opinion and Order. Its claim that the Court contravened governing Federal Circuit precedent relies on decisions that do not address the standards that apply to cases, like this bid protest, that are assessed under the standards of the APA. Nor has CSI persuaded the Court that it erred in relying on out-of-circuit authority that does squarely address the specific question at issue. And finally, CSI has provided no basis for the Court to reconsider its application of the presumption of regularity that applies to GSA's designation of the Administrative Record.

### A.     The Court's Opinion and Order Is Not Contrary to Federal Circuit Precedent.

CSI first claims that the Court's Opinion and Order is contrary to three Federal Circuit decisions: *Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985); *Marriott International Resorts, L.P. v. United States*, 437 F.3d 1302 (Fed. Cir. 2006); and *In re United States*, 678 F. App'x 981 (Fed. Cir. 2017).[3] *See* ECF No. 36 at 8–9. According to CSI, these cases, read together, establish "three procedural requirements that the government must meet, when challenged, in order to invoke the deliberative process privilege." ECF No. 36 at 12 (synthesizing cases as requiring that (1) "an agency head or [his] chosen delegate [] must assert the privilege," (2) the "claim of privilege should be made with regard to specific documents and communications," and (3) "the government must specify the particular privilege claimed and the basis for its assertion as to each withheld document" (internal quotation marks and citations omitted)). Although CSI reads the holdings correctly, these cases do not provide a basis for the Court to reconsider its Opinion and Order.

---

[3] Despite pre-dating this action by several years or decades, CSI did not cite these cases in its papers, and only briefly referred to one of the cases during oral argument. *See generally* ECF No. 18; Reply in Supp. of Mot. to Complete, ECF No. 24; Oral Arg. Tr. at 15:14, ECF No. 31.

*Zenith*, *Marriott*, and *In re United States* do not address the questions at issue here: specifically, whether documents protected by the deliberative-process privilege (or another privilege) are properly considered part of an administrative record in an action subject to the standards of the APA, whether the Government has a legal obligation in such a case to comply with any particular procedures (like providing a privilege log) when it excludes privileged documents from the administrative record, and whether CSI has met its burden to rebut the presumption of regularity that applies to GSA's designation of the administrative record filed in this case. Rather, all that the cases establish are general rules for how the Government must invoke the deliberative-process privilege to withhold discoverable documents in de novo proceedings and how the courts should evaluate that claim of privilege when challenged by a party.

For example, in *Zenith*, the plaintiff brought an action in the United States Court of International Trade ("CIT") seeking to prevent the United States from settling certain civil claims against importers of Japanese television receivers. 764 F.2d at 1578. The court preliminarily enjoined the United States from implementing the settlement and ordered Zenith to post a bond to indemnify the United States should the court eventually determine the Government was wrongfully enjoined. *Id.* After the court made that determination and dissolved the injunction, the United States moved for an assessment of damages, including interest, in the amount of the bond. *Id.* Zenith opposed the motion and served the United States with interrogatories and requests for production of documents regarding an alleged interagency dispute about whether interest should accrue on the importers' debts under the settlement agreements. *Id.* at 1578–79. The CIT held that the Government waived its privilege claim with respect to most of the sought-after materials because it had initiated the judicial proceedings to obtain damages from Zenith. *Id.* at 1579.

On appeal, the Federal Circuit reversed.  It determined that the court should have allowed the Government's claim of privilege because Zenith had not made a sufficient showing of need to breach the privilege.  *Id.* at 1580.  It further determined, however, that the Government could not merely assert a "generalized" claim of privilege in response to interrogatories seeking the identity of certain officials who participated in the "consideration of the interest issue."  *Id.* at 1581.  The Federal Circuit concluded that "[a]ny government claim of privilege should be made with regard to specific documents and communications and specify the particular privilege claimed and the basis for its assertion."  *Id.*

The *Zenith* decision is inapposite to the dispute at issue in this case.  Unlike in *Zenith*, here, the Tucker Act, as amended by the Administrative Dispute Resolution Act, prescribes that the Court apply the standards set forth in the APA to review bid protests.  *See* 28 U.S.C. § 1491(b)(4).  As explained by the Federal Circuit, the APA limits the Court's review, except in certain circumstances, to the "record the agency presents to the reviewing court."  *Axiom*, 564 F.3d at 1379–80 (quoting *Fla. Power & Light*, 470 U.S. at 743–44).  *Zenith* provides no insight on the proper standards to apply where, as here, the Government is charged with compiling and filing an administrative record for judicial review.  In particular, it does not address what constitutes a complete record or what standards apply when a party challenges the completeness of the record.  Although *Zenith* makes clear the Government must follow certain procedures to properly invoke the deliberative-process privilege to withhold otherwise discoverable information in de novo litigation, the question here is whether CSI has met its burden to overcome the presumption of regularity that applies to GSA's designation of the Administrative Record.  *See Xerox Corp. v. United States*, No. 21-1807, 2021 WL 9563553, at *5 (Fed. Cl. Dec. 17, 2021) ("Xerox may sustain its motion to complete the administrative record by demonstrating the existence of documents that

were considered by the Agency and improperly omitted from the agency-assembled record. The Court finds that Xerox has not met its burden in this instance.").

*Marriott* treads similar ground. That decision established the formal requirements in this Circuit for the Government to invoke and assert the deliberative-process privilege. The Federal Circuit determined that the trial court had erred by requiring the head of the agency to personally invoke the privilege. *See Marriott*, 437 F.3d at 1308. It concluded that "the head of an Agency may, when carefully undertaken, delegate authority to invoke the deliberative process privilege on the Agency's behalf." *Id.* Like in *Zenith*, nothing in the opinion concerns the standard to apply where a party believes the administrative record in a case applying APA-review is incomplete, nor does it explain how the movant can overcome the presumption that the record is complete even where assertedly privileged documents are at issue. Indeed, *Marriott* was a tax suit; there was no agency-designated administrative record, and nothing in the case related to the APA's limited standards of review. *See id.* at 1303–05. Instead, the court was presented with a dispute governed by the discovery rules that apply to develop the record of evidence in a de novo proceeding.[4]

*In re United States* is similarly inapposite. Setting aside the fact that the decision is unpublished and thus nonprecedential, *see Klingenschmitt v. United States*, 119 Fed. Cl. 163, 183 (2014), it stands for the proposition that "[i]n deciding whether to compel discovery in the face of

---

[4] Indeed, *Marriott*'s reliance on a D.C. Circuit case, *Landry v. Federal Deposit Insurance Corp.*, 204 F.3d 1125 (D.C. Cir. 2000), highlights the fact that the issue presented in the Federal Circuit cases that CSI cites is not the same issue presented here. As explained in *Landry*, long-standing D.C. Circuit precedent recognizes similar procedural requirements for the Government to invoke the deliberative-process privilege in the context of pre-trial discovery. *See id.* at 1135 (citing, among other cases, *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984)). But the D.C. Circuit has a separate line of cases addressing the scope of an administrative record vis-à-vis deliberative materials. *See Oceana, Inc. v. Ross*, 920 F.3d 855 (D.C. Cir. 2019) (citing, among other cases, *Norris & Hirshberg v. SEC*, 163 F.2d 689, 694 (D.C. Cir. 1947)).

asserted executive privileges, the trial court is tasked with addressing, on a document-by-document basis," whether the Government has met the procedural and substantive requirements to withhold documents responsive to discovery requests on the basis of the asserted privileges. *In re United States*, 678 F. App'x at 987. Again, the case—a constitutional-taking action—concerned the proper procedures and analysis applied after the Government formally asserts the executive privilege to withhold responsive documents in discovery, not the proper standard to apply to determine whether the plaintiff has shown that an agency-designated administrative record—which defines the scope of judicial review under the APA—is incomplete. *See id.* at 985–86. The case does not consider or relate in any way to the limited review available in APA-review cases.

In sum, the Federal Circuit decisions cited by CSI do not provide a basis for the Court to grant reconsideration.

**B.    The Court Declines to Reconsider Its Reliance on Persuasive Out-of-Circuit Authority.**

CSI's Motion for Reconsideration also takes issue with the Court's reliance on two out-of-circuit decisions that directly address the dispute at issue: *Oceana, Inc. v. Ross*, 920 F.3d 855 (D.C. Cir. 2019), and *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438 (9th Cir. 2024), *petition for cert. filed*, No. 24-300 (U.S. Sept. 13, 2024). Both decisions, CSI admits, stand for the proposition that "deliberative materials are 'not part of the administrative record to begin with,'" meaning also that they are "not required to be placed on a privilege log." ECF No. 36 at 16 (quoting *Blue Mountains*, 99 F.4th at 445). CSI argues, however, that the cases were "wrongly decided." *Id.* at 15. The Court disagrees.

CSI's argument primarily highlights points raised in the separate opinion in *Blue Mountains* respecting denial of rehearing en banc. *See* ECF No. 36 at 17–18. Just as those points failed to persuade the majority of the Ninth Circuit to rehear the matter en banc, they do not

9

persuade the Court that the reasoning in both *Oceana* and *Blue Mountains* was wrong. First, although CSI correctly notes that "the Supreme Court has never 'limit[ed] the full administrative record to those materials that the agency unilaterally decides should be considered by the reviewing court,'" *id.* at 16 (quoting *Blue Mountains*, 99 F.4th at 450, which in turn quoted *In re United States*, 138 S. Ct. 371, 372 (2017) (Breyer, J., dissenting from the grant of stay)), *Oceana* and *Blue Mountains* did not hold otherwise. Indeed, *Blue Mountains* correctly explained that the APA requires a court to review "the whole record," which consists of "all documents and materials directly or indirectly considered by agency decision-makers." *Blue Mountains*, 99 F.4th at 444 (citing *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989)); *In re United States*, 138 S. Ct. at 372; *see* ECF No. 34 at 7. And both cases expressly recognized that where a movant meets its burden to show that the record filed by the agency is incomplete, the court may order the agency to include documents in the record that were not previously filed. *Oceana*, 920 F.3d at 865; *Blue Mountains*, 99 F.4th at 445. Rather, the question presented in *Oceana* and *Blue Mountains* was whether deliberative materials should be considered part of the "whole record." *Blue Mountains*, 99 F.4th at 444; *see Oceana*, 920 F.3d at 865. The Supreme Court has not squarely addressed that question.[5]

---

[5] As the Opinion and Order acknowledged, a related issue was before the Supreme Court in *In re United States*, 583 U.S. 29 (2017). *See* ECF No. 34 at 9–10. In that case, the district court ordered sua sponte the production of a privilege log after the plaintiffs filed a motion to complete and, finding the movants rebutted the presumption of completion, subsequently ordered the Government to complete the administrative record with several broad categories of materials as well as several documents for which the court found no valid claim of privilege. *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 17-05211, 2017 WL 4642324, at *7–8 (N.D. Cal. Oct. 17, 2017). In a per curiam opinion, the Supreme Court ruled for the Government but on an alternative ground, requiring the district court to first address the Government's threshold challenges of justiciability and jurisdiction that could potentially obviate the need for review of the record altogether. *In re United States*, 583 U.S. at 31–32.

CSI also questions the strength of *Oceana*'s and *Blue Mountains*' reasoning, arguing that cases on which those decisions relied did not address questions of completeness or whether pre-decisional deliberative materials are part of an administrative record. ECF No. 36 at 17 (discussing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), and *United States v. Morgan*, 313 U.S. 409 (1941)). CSI's criticisms are misplaced. Cases like *Volpe* and *Morgan* stand for the well-established proposition that courts should usually not permit "inquiry into the mental processes of agency decisionmakers." *Volpe*, 401 U.S. at 420; *see Morgan*, 313 U.S. at 422 (holding that it was "not the function of the court to probe the mental processes of the Secretary"). Whether that inquiry occurs through post-decisional testimony by the decisionmaker (as in *Volpe* and *Morgan*) or production of pre-decisional deliberative materials generated during the decision-making process, the intrusion on the "integrity of the administrative process" is the same. *Morgan*, 313 U.S. at 422. Indeed, the testimony that *Morgan* held should not have been allowed delved into "the process by which [the Secretary] reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates." *Id.* That is essentially the same inquiry that CSI seeks to undertake through its request for pre-decisional internal communications and draft versions of the amended solicitation.

Further, CSI's concern that the holdings of *Oceana* and *Blue Mountains* will damage judicial review in APA-review cases is overstated. ECF No. 36 at 17. These cases rely on two core principles of APA review—the presumption of regularity and the limited scope of judicial review—both of which are rebuttable and thus subject to judicial oversight. *See Volpe*, 401 U.S. at 420; *Oceana*, 920 F.3d at 865; *Blue Mountains*, 99 F.4th at 445. CSI suggests that a default rule requiring the Government to produce a log of documents excluded from the administrative record is necessary to aid litigants in potentially rebutting the presumption of regularity and completeness

11

because an agency *may* mistakenly omit documents from the record or make legally erroneous privilege calls. ECF No. 36 at 17–18. But such a requirement, premised on the possibility that the agency failed to exercise its official duty in accordance with the law, is antithetical to the presumption itself and would impose undue burdens on agencies tasked with compiling and filing the record in the courts. It would also risk converting APA-review cases into exactly what the Federal Circuit has warned this Court to avoid: a de novo proceeding. *See Axiom*, 564 F.3d at 1379–80; *see also Stand Up for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 123 (D.D.C. 2014) ("[R]equiring the United States to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's predecisional process and potentially undermine the limited nature of review available under the APA." (quoting *Great Am. Ins. Co. v. United States*, No. 12-9718, 2013 WL 4506929, at *9 (N.D. Ill. Aug. 23, 2013)).

Further undermining CSI's attacks on the persuasive value of *Oceana* and *Blue Mountains* is the fact that no other courts of appeals have come to the opposite conclusion in any precedential, published decision. As the Court explained in its Opinion and Order, only three other relevant appellate orders appear to exist and each was non-precedential. *See* ECF No. 34 at 8 n.2. One of those orders broadly supports the Government's position here. *See In re U.S. Dep't of Def. & U.S. EPA Clean Water Rule*, Nos. 15-3751 et al., 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016).[6]

---

[6] CSI's contention that *In re Clean Water Rule* "arguably supports" CSI's position is mistaken. ECF No. 36 at 18 n.4. The Sixth Circuit did not hold that a "document-by-document" review of assertedly privileged documents is required where a party challenges the completeness of the record. *See id.* Instead, the Sixth Circuit reviewed documents that one of the moving parties attached to its motion to complete—documents that had already been made public through a congressional investigation. *See In re Clean Water Rule*, 2016 WL 5845712, at *2; Mot. to Complete the Admin. R. at 10, *In re Clean Water Rule*, Nos. 15-3751 et al. (6th Cir. July 11, 2026), ECF No. 106-1. Even with concrete evidence that the documents existed, the Court concluded that the movants had "failed to carry their burden of rebutting the applicable presumption of regularity by clear evidence" for all but several pages of one technical memorandum. *In re Clean Water Rule*, 2016 WL 5845712, at *2 (finding that non-deliberative "factual and technical"

The other two orders arguably support CSI, but one order applies a heightened mandamus standard and the other order is unreasoned. *See In re Nielsen*, No. 17-3345, slip op. at 1–2 (2d Cir. Dec. 27, 2017); *Defs. of Wildlife v. U.S. Dep't of the Interior*, No. 18-2090, slip op. at 2 (4th Cir. Feb. 5, 2019). At the lower court level, CSI refers to a "growing consensus among district courts [] that *Oceana*'s holding is overly broad," ECF No. 36 at 16 (quoting *Save the Colo. v. Spellmon*, No. 18-03258, 2023 WL 2402923, at *4 (D. Colo. Mar. 7, 2023)), but other courts have described the split on whether deliberative materials are part of an administrative record as being fairly even. *See Nat'l Council of Negro Women v. Buttigieg*, No. 22-314, 2024 WL 1287611, at *4–5 (S.D. Miss. Mar. 26, 2024); *Yellowstone to Uintas Connection v. Bolling*, No. 20-00192, 2021 WL 5702158, at *5 (D. Idaho Dec. 1, 2021). In any event, looking to the D.C. Circuit for persuasive guidance on unresolved issues concerning APA review is reasonable since a large proportion of APA cases are filed in that circuit.

CSI next attempts to distinguish *Oceana*, which involved an APA challenge to notice-and-comment rulemaking, from cases like bid protests that involve informal agency action. *See* ECF No. 36 at 14. As support, CSI relies on *Pikes Peak Family Housing, LLC v. United States*, 40 Fed. Cl. 673 (1998), which "recognized a 'critical difference between the contemporaneous record compiled by an agency in the course of a formal adjudication or rulemaking proceeding[] under the APA, and the administrative record hospitably assembled by the agency for purposes of bid protest litigation.'" ECF No. 36 at 14 (quoting *Pikes Peak*, 40 Fed. Cl. at 676). *Pikes Peak*, which predates *Axiom*, described the administrative record in a bid protest as "merely 'a post facto

---

information was "properly included in the record"). The Court declined to inquire beyond the public documents attached to the movant's motion and, further, declined to require the Government to produce a privilege log or formally invoke the deliberative-process privilege for any withheld documents. *See id.*

recreation of a procurements documentary trail.'" 40 Fed. Cl. at 676 (quoting *Alfa Laval Separation, Inc. v. United States*, 40 Fed. Cl. 215, 220 n.6 (1998)). The court further explained that "[e]ffective judicial review of an agency's exercise of discretion is irreconcilably at odds with the notion that the reviewing court's inquiry must be confined to an administrative record that is likewise the product of the agency's sole discretion." *Id.* at 677.

*Pikes Peak* is neither binding nor persuasive to this Court for three reasons. First, and most importantly, *Pikes Peak* involved a question of supplementing the administrative record, and the central line of reasoning in the case—*i.e.*, the application of the factors set forth in *Esch v. Yeutter*, 876 F.3d 976 (D.C. Cir. 1989)—was soundly rejected by the Federal Circuit in *Axiom* as inconsistent with the "limited nature of arbitrary and capricious review" under the APA. *Axiom*, 564 F.3d at 1380–81 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000)) (explaining that the broad circumstances for supplementing the administrative record outlined in *Esch* are "not the law of this circuit"); *see Pikes Peak*, 40 Fed. Cl. at 677–79 (relying on *Esch* to find that "[u]nexplained irregularities" in the agency-designated administrative record justified supplementation of the record).

Second, regardless of whether an administrative record is compiled during rulemaking or formal adjudication, or instead through a less formal agency decision-making process, the presumption of regularity and completeness applies equally. Courts have recognized that rebuttable presumption in cases challenging a variety of informal agency actions or decisions, including in bid protests. *See, e.g.*, *Blanca Tel. Co. v. FCC*, 991 F.3d 1097, 1108–09, 1120 (10th Cir. 2021) (agency letter and subsequent orders demanding plaintiff repay subsidies); *Winnemem Wintu Tribe v. U.S. Forest Serv.*, No. 09-01072, at *1–2, *10 (E.D. Cal. July 24, 2014) (various agency actions that allegedly failed to protect tribal sites, including construction of bridge and

14

truck ramp); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 21-5706, 2022 WL 2805464, at *1, *3 (S.D.N.Y. July 18, 2022) (agency decision and finding that a particular salamander species did not warrant listing as threatened or endangered); *Poplar Point*, 145 Fed. Cl. at 494 (bid protest). *Pikes Peak* fails to make clear how the record-generation process in a bid protest differs in any meaningful way from an agency's designation of the administrative record following a rulemaking or formal adjudication. It points only to "post facto" timing, *Pikes Peak*, 40 Fed. Cl. at 676, but whether the agency compiled the record contemporaneously or after litigation commenced is immaterial for purposes of applying the presumption. *Cf. Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 n.2 (11th Cir. 1996) (observing that there is "nothing wrong with an agency compiling and organizing the complete administrative record after litigation has begun from all the files of agency staff involved in the agency action").

Finally, the concern in *Pikes Peak* for effective judicial review where the reviewing court's "inquiry" is "confined to an administrative record," *Pikes Peak*, 40 Fed. Cl. at 677, is already addressed by the case law. As noted above, *Oceana* and *Blue Mountains*—along with numerous other cases cited in the Court's Opinion and Order—make clear that there are circumstances in which the Court need not limit its review to the record filed by the agency: specifically, where the movant provides clear evidence that the Government improperly withheld documents from the administrative record or where the movant provides a reasonable factual predicate for an allegation that the agency engaged in bad faith or other improper behavior. *See Oceana*, 920 F.3d at 865; *Blue Mountains*, 99 F.4th at 445; ECF No. 34 at 11; *see also Axiom*, 564 F.3d at 1379–80. Indeed, the Court's Opinion and Order explained in depth how a party might successfully show that the

15

administrative record should include additional materials or that the court should also review extra-record materials. *See* ECF No. 34 at 11–12.

In sum, CSI has not persuaded the Court that it erred in relying on *Oceana* and *Blue Mountains* in its Opinion and Order.

**C.    CSI Has Provided No Reason to Disturb the Court's Determination that GSA's Designation of the Administrative Record Is Entitled to a Presumption of Regularity and Completeness.**

Finally, CSI argues that the Administrative Record is not entitled to a presumption of completeness because the Government's counsel "admitted to the Court that the agency possesses but has not produced documents that are relevant to CSI's Complaint because it views such documents as privileged." ECF No. 36 at 19. CSI further believes that because counsel said she "did not know why" Attachment 1 had been withheld from the record, counsel's lack of knowledge means that, in fairness, the Government should not benefit from the presumption. *Id.* at 19–20. These arguments, which can fairly be characterized as attempting a second bite at the apple, miss the point.

First, CSI continues to mistakenly assert that because the Government has conceded that some "relevant" documents exist, the documents must automatically be included in the Administrative Record. *Id.* at 19. The Government has made no such concession. It merely acknowledged that certain materials "related" to the procurement were determined not to be part of the record and thus were not included in the Administrative Record.[7] *See* ECF No. 38 at 13 (discussing Government counsel's references to the deliberative-process privilege in briefs and at

---

[7] The proposition that related documents may exist outside the record is not surprising. The Court would not expect the Government to include in the Administrative Record "every scrap of paper that could or might have been created" during the procurement. *Ctr. for Biological Diversity v. Wolf*, 447 F. Supp. 3d 965, 973 (D. Ariz. 2020) (quoting *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1237 (E.D. Cal. 2013)).

argument); Oral Arg. Tr. at 51:16–25, 52:6–12, ECF No. 31. As the Opinion and Order explained, pre-decisional, deliberative documents in an APA-review case are "'immaterial' and [thus are] necessarily irrelevant to the reasonableness of the agency's action." ECF No. 34 at 8 (quoting *Oceana*, 920 F.3d at 865); *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Hum. Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009). Because such documents are generally not part of an administrative record, their absence from the record does not in itself undermine the presumption of completeness. *See* ECF No. 34 at 11 (holding that "the completion standard makes clear that the movant must meet *some* burden;" in the context of privilege, that burden requires clear evidence that the Government "improperly withheld the documents from the record" or "engaged in bad faith, improper behavior, or bias" (emphasis in original)).

Second, CSI argues that because the Court found one basis to question whether the Administrative Record is complete, the presumption has been rebutted in all other respects. ECF No. 36 at 20. It is true that the Court found CSI met its burden with respect to Attachment 1. *See* ECF No. 34 at 15–16. As such, the Court appropriately ordered *in camera* review of and a description of the privilege assertion for that particular document. *Id.* at 16–17. CSI fails to explain why that remedy should extend to all documents responsive to CSI's broad document categories, especially where the Court analyzed and expressly rejected CSI's evidence purporting to establish the basis for including those documents in the record—*i.e.*, to show that the challenged procurement decisions were pretextual. *Id.* at 13–15.

Third, although the Court expects the Government's counsel will be prepared to address specific questions about the administrative record in an argument addressing a challenge to the completeness of the record, counsel's inability to do so here is not fatal. The agency that conducts the procurement and is responsible for compiling the administrative record is entitled to the

presumption, not the Department of Justice. *BHB Ltd. P'ship v. United States*, 147 Fed. Cl. 226, 229 (2020) ("The government's designation of the [Administrative Record] is deemed presumptively correct."); *see Axiom*, 564 F.3d at 1379. The Department's ability to articulate its litigating positions at argument does not bear on whether the presumption of regularity and completeness applies to GSA's designation of the Administrative Record. Here, GSA's contracting officer certified the Administrative Record as complete. *See* Admin. R. at 6, ECF No. 19-1; Am. Admin. R. at 7, ECF No. 27-1. That designation is entitled to the presumption of regularity, and it is that designation that CSI must provide clear evidence to overcome. *See Poplar Point*, 145 Fed. Cl. at 494.

To the extent that CSI argues that the "instant facts" show the agency-designated record is not entitled to the presumption, it essentially makes the same argument that it already had an opportunity to make (and did make) before the Court—*i.e.*, that sufficient evidence exists to rebut the presumption. *See* ECF No. 24 at 7; ECF No. 31 at 35:18–25; *see also Martin*, 101 Fed. Cl. at 671. In resolving CSI's Motion to Complete, the Court considered the arguments that CSI presented in its briefing and at oral argument. CSI points to no new facts that arose following the Court's Opinion and Order that would warrant reconsidering the Court's determination that CSI failed to provide clear evidence that the agency-designated Administrative Record is incomplete with respect to the broad categories of documents that CSI identifies.[8]

---

[8] The Court will issue a final order resolving the outstanding dispute over Attachment 1 by separate order.

## IV.  CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's Motion for Reconsideration (ECF No. 36).

**SO ORDERED**.

Dated:  December 20, 2024                                     */s/ Kathryn C. Davis*
                                                                                         KATHRYN C. DAVIS
                                                                                         Judge